May it please the Court, Nolan Knight and Dan Pipitone here on behalf of the Appellant Supreme Production Svc, Inc. Members of the panel, Supreme respectfully requests that the Court reverse the order of the lower court declining to refer to arbitration the Fair Labor Standards Act cause of action asserted by the plaintiff below and appellee here, Mr. Ted Kubala. Let me ask you a question. I'm having a little difficulty in understanding exactly what your client's position is with regard to the prospective, retrospective force of the agreement here. As I understood this case at the outset and throughout, you were arguing that your arbitration agreement had prospective effect, that is, it dealt with whatever may be the disputes going forward and did not reach and include the lawsuit that was pending at that time. Your Honor, that goes to the nature of the claims that Mr. Kubala has asserted and that as a matter of law, those FSLA causes of action, they continue to accrue. My question is that in terms of what you did here, let me go at it in a different way. Let's suppose that this employee, I take it, at some point complained that he was working hours for which he was not being properly compensated under federal law, correct? That's correct, Your Honor. At that juncture, do you maintain that you could have fired him for making that complaint? No, we do not, Your Honor. You would have difficulty in doing that, I think you would agree. That's correct. Okay. Now, instead, you didn't fire him, but what you did is you called in the employee and said either you take this or you leave, and the deal is that you're going to have to withdraw or effectively take away your federal forum. Your Honor, I understand the question, and I want to clarify the record in that regard. Mr. Koubala . . . My question is that, and I'm going to move away from the record and the specific facts. My question has to do with the tension here between the position of the . . . what I defer to all this group of cases, the Primal Pain case and so forth, the particular delegation clauses that's contained within the arbitration agreement itself. My question has to do is that you basically say to the employee, you either accept this agreement or you're fired, or you're out of here. Okay. Now, you've got a right to do that, but what you've effectively done is to . . . what it says in the statute here, the underlying clauses themselves, and in particular, the delegation clause itself . . . As to whether or not the delegation clause is enforceable, Your Honor? Yes. What I'm saying to you is that I have a real problem with the threshold of this whole analysis. I accept the Supreme Court's analysis, as I was, the 5-4 decision, and as you recall, Justice Scalia made it quite clear that the delegation provision of an arbitration agreement was a distinct provision, and it did not matter that the entire contract that was at issue was an arbitration contract. You agree with that? I agree with that, Your Honor. I assumed you would. Now, my question is, in the facts that we have insofar as . . . what you have is a pending lawsuit against you, and you go to your employee, and you say, you've signed up or you're fired. Do you have any difficulty with that? Your Honor, I would have difficulty with that if the record reflected that Supreme was aware of the lawsuit before . . . Awareness doesn't matter. That's the effect of what you did. We were not aware of the lawsuit, Your Honor. In fact, the record reflects that although Mr. Kobala filed his lawsuit on March 9th, Supreme first learned of the lawsuit and first had any indication of the dispute. You knew that he had a complaint about . . . you knew he was complaining about wages. I thought that was the answer to the first question I asked you. Well, I must have . . . You knew he was filing a complaint. You knew that . . . you knew . . . look, what happened here, and you know that it's quite clear on the record that the company became aware that it had a great deal of exposure because of the working structure of the particular industry that had been going on, and what it did was to then announce a new policy, and that new policy was we won't arbitrage you. I respectfully disagree, Your Honor, and when I made reference to the fact that the company became aware of the dispute, I was intending to convey that Supreme became aware of the prior to the date that they began contemplating the policy, prior to the date that they implemented the policy as of March 13th, 2015 . . . What I'm suggesting to you is that I would find it incredulous that the company did not adopt this new policy responsive to the potential liability it had. That's not a criticism. It's just a reality of business. Well, in . . . At some point, a lawyer says, you know, you got all this problem out there. You better get this into arbitration. In the same way that every company views its potential exposure in this regard, well, that is true, Your Honor. Supreme decided, prior to March 2015, that it would be prudent to implement a policy that required arbitration with its employees. In other words, I'm just . . . I'm saying to you, though, that what I'm trying to get at is my concern about, on the facts of this case, where you have a . . . where an employee has a pending suit against you, and what you tell the employee is that you take this new deal or not. You knew when you made that offer to him, the lawsuit was pending against you. No, Your Honor. We did not. And, in fact, the record . . . You were insisting for some period of time to do that. He initially refused, and then he later came back. You're saying you still didn't know about the lawsuit? We were not aware of the lawsuit, Your Honor, until approximately March 27th, when we were served with the lawsuit. There's absolutely no evidence in the record . . . But when did he sign that agreement? He signed the agreement on March 12th. By its own terms, it became effective, irrespective of his signature, as of March 13th. And it's true, it is true, that he filed his lawsuit on March 9th, but that has to be understood in the larger context of the practical realities here. The practical realities are that Supreme began contemplating implementation of the arbitration agreement well before March 2015, such that by March 1st, they actually had a written comprehensive document. So this was well in advance of the time in which they had any reason to suspect that Mr. Caballa, or anyone else for that matter, was contemplating a lawsuit. And I might add, though this goes slightly beyond the scope of the issues that the court is required to consider today, one of the reasons that Supreme had no reason to anticipate this type of lawsuit is because of the particularly generous manner in which its employees were being compensated. The record reflects that these gentlemen, in some cases, were making between $100,000 to $200,000 a year. And I do not mean this to be pejorative, but we're talking about individuals who not only don't have college degrees, but in many cases, did not have high school diplomas. So the notion that they, in any specific way, or even any generalized way beyond Judge Higginbotham, the notion that all companies have the right to plan in a way to try to control and minimize their exposure . . . I'm not, don't misread me, I'm not suggesting the contrary, and I'm not unaware of what you just said. That's just fairly common knowledge, I think. My concern has to do with the difficulties of applying, of the situation of a principle law that, what concerns me about getting to a principle law where a company can threaten a lawsuit, simply go out and tell the employees, you're fired unless you sign on to this agreement to arbitrate. In other words, to take away their federal form straight away, in the face of pending litigation. That just means that you can . . . and about a principle, I'm not sure how that line is drawn. Your Honor, I think it would have to be a very fact-specific analysis. If there was some indication, and there's not here, that a company being aware of the lawsuit then responded by intentionally trying to undercut the individual's right to proceed with the lawsuit, then that would be a close question. But that's not what the record reflects here, Your Honor. Instead, I think the pertinent issues go to what this Court and its precedent, and we referenced these in the briefing, but I'll mention . . . Well, when you . . . when he signed . . . when he agreed, he agreed eventually to stay on and make those large dollars and take the longer hours. When he signed that agreement, was it clear that the lawsuit that was pending was going to be pulled out without subject of discussion at all? No, Your Honor. We had no knowledge at all of the lawsuit, so there was no discussion of any kind. It just . . . later . . . later . . . okay, you just never had that . . . no one was aware of what the operative effect of that would be on the pending lawsuit, because you didn't know about it. No one was aware of the operative effect of the arbitration agreement on the pending lawsuit, you mean, Your Honor? I thought . . . I guess I see some conflicting evidence here that one of the statements made that he not surprisingly did not agree to the arbitration. Well, interestingly enough, that's a statement made in the briefing by the appellee, and I think that's also interesting, Your Honor, in the sense that Mr. Kubala quite clearly was represented by counsel by no later than March 9th because he'd filed a lawsuit, but he nonetheless voluntarily signed the agreement to arbitrate on March 12th and otherwise was of the arbitration agreement if he wanted to continue his employment. And I might add, this is permissible under the Henry Halliburton decision of the Texas Supreme Court, where you can alter the terms of an employment relationship as long as you provide notice, as has occurred here, and you inform the employee that if he continues his employment, he does so only subject to the arbitration agreement. The fact that Mr. Kubala, after having filed a lawsuit, nonetheless signed an agreement that obligated him to arbitrate any matters going forward, and then in any event elected, Your Honor, elected to continue the employment, knowing that the arbitration agreement would control the party's relationship, I would respectfully submit as a factor that cuts strongly in favor. What do we do with the briefing, your briefing, which suggests that you're only talking about prospective only? Your Honor, well, actually, Your Honor, I'm suggesting that that's precisely the kind of issue that should be resolved by the arbitrator, because the delegation clause vests the arbitrator exclusively with the authority to resolve precisely the kinds of issues that you are raising. So I'm not suggesting, assuming for the sake of argument, that these concerns are not legitimate, Your Honor. I'm instead suggesting that the parties agreed the person who will resolve the relative merits of these types of concerns would be an arbitrator, not the court. And the— That's not what you initially argued. You argued that that's prospective only, that we have to carefully sort out what the claims going forward are, the claims going back for these particular groups of people. And— Given that your position, which I understand is a very powerful position under the Rental Decision, that all was going to be decided by the arbitrator. In other words, it was going to be retrospective, or it could be. It could be when we present these arguments to the persons that the parties agreed would be the arbiters—excuse the pun—or precisely these type of issues, it could be the case that the arbitrator looks at the agreement and determines, by construing it as only the arbitrator is delegated the power to do, that perhaps it could cover pre-arbitration agreement claims. Or it could be the case that the arbitrator looks at the agreement and concludes that  Let's suppose that your agreement with it said explicitly this is prospective only. The delegation clause then was not going to help you, was it? It would under these circumstances, Your Honor. Even though your written agreement with it—so you entered a written agreement that our agreement with arbitration has prospect effect only and will not have retrospect effect. You say that on a rental city that— Because of the nature of a FLSA claim for overtime wages, yes, it would. Under this court's authority, and we cite the Hodges opinion in our briefing, a FSLA claim accrues in each subsequent pay period in which the person claims that they were not properly compensated. Mr. Kubala continued his employment after March 13th, when the arbitration agreement became effective. So for each of those subsequent pay periods, his claim literally did not accrue or exist. My question is, surely you can agree with the employee as to what the scope of the arbitration can be. You could do that. And if you explicitly agreed with him—I'm not suggesting this is a hypothetical—that the arbitration agreement here is for prospective claims only, then there is no—it's not—there is no room left for the arbitrator to—you've determined the scope by agreement, not by deferring to arbitration. May I respond, Your Honor? Sure. Your Honor, that—I understand the question, but it assumes that it would be that clear cut from the perspective of both parties. No, I understand that. I would like to get you to answer my question, though. If you did agree, if you had done so clearly, that this arbitration agreement is to have prospective effect only, only from this day forward, then the—there would be no scope to be determined by—there would be no scope issue for the arbitrator to decide. Do you agree with that or you don't? I do agree with that, but that would necessarily mean that we, by that time, would be in the context of arbitration. I understand that. I'm just suggesting there may be a fact question about that. That's all I'm saying. Thank you. You saved time for about a minute tonight. Mr. Burch? Good morning, and may it please the Court. My name is Rex Burch, and along with Matt Parmet, I represent Mr. Caballa in this appeal. I think there are a few undisputed facts that are particularly relevant here. Everyone agrees that on March 9th, the day that Mr. Caballa filed his lawsuit, there was no agreement, no policy, nothing that required arbitration of his claims, FLSA or otherwise. At the time that Mr. Caballa filed his complaint with the Court, there was absolutely nothing requiring arbitration. Two days later, the folks from Supreme brought him into a meeting, along with a group of other employees, and presented him with an arbitration agreement. That arbitration agreement says, and I quote, you agree that any, quote, covered dispute, as that term is later explained, that you may have at any time following the effective date of this policy against Supreme is subject to arbitration. Now, the, my colleague has made reference to Mr. Caballa signing the arbitration agreement. I just want to be clear that their motion to supplement the record with evidence that Mr. Caballa signed the agreement was not allowed by the Court. That can be found at Record 333. That's actually not part of the factual record. But even if it is, that doesn't change the fact that an agreement that is, that is limited to disputes that you may have in the future does not apply to disputes that you already have in the past. And I was trying to think of how I would analyze this if I was. Well, you can, you can prospectively have a dispute about something that happened X number of years ago. It can be a current dispute about past events. You certainly can. And in fact, in this case, this arbitration agreement or arbitration policy has been applied to workers who raise their claims after the effective date of the policy. And so, even though their claims accrued in the past. And so, I think what matters here is what, when did the dispute arise? And it's indisputable that the dispute arose prior to this arbitration agreement. I mean, there's just no way around it. I mean, and whether it's two days, whether it's three days, whether it's four days. Do you concede that your client must seek from the arbitrator, if anyone, any claims that accrued after his lawsuit was filed? I don't, Your Honor. And I interpreted their brief the same way that you did, to be honest with you, is that now on appeal, they want to split the case into what goes before the court and what goes to arbitration. And I think you saw in our response that we said, look, the arbitration agreement defines when the dispute arose, and the dispute arose prior to the arbitration. My question, though, it seems to me that implicit in your argument, and I'm trying to get issues off the table if I can, that at the least, only an arbitrator can decide the questions of any liability of the company for work following the signing of that document, or what we'd accept as the effective date of the instrument. If I understand your question, it's, does Mr. Kubala have to arbitrate FLSA claims that post-date March 13, 2015, for example? That is not our position? Well, okay. What is your position, then? It seems to me that he signed an agreement, and I don't know if you were entitled to say it, sign it, or you're out of here. Now, that has some effect, and one of the real difficulties is the problem of retrospective effect. Going forward, I have no difficulty with that. He signed that agreement, but you suggest that despite that, that does not go to arbitration? There's no evidence in the record that he signed that, I understand. Well, you say, well, he executed an agreement, I forget the word sign. You don't dispute that he had an agreement, he entered into an agreement with this company to keep his job, because he went on and worked under those terms and conditions, whether he signed it or not. There is a contract. You agree with that? I do. And doesn't that at least mean that any claims he's got for any work after that has got to be decided by an arbitrator? I don't think so under the terms of this arbitration agreement, because under the terms of this arbitration agreement, they very specifically chose language that relates to when they received the roadies. He's just not, his claim was pending, and it goes forward as if there were nothing signed. Correct. Now, they accepted him from the whole thing. What was the purpose of signing him up then? I'm sorry? Why would they sign him up and accept him for many limitations? What was the purpose of signing him up? Well, because he could have disputes in the future. I mean, he stayed working there, right? And in fact, he was just a couple months after he filed his lawsuit. I'm missing something here. I'm sorry. They signed him up, and at the least, if he continued to work there, his hours, he wants to still maintain that he takes those high incomes for those hours. If he wants to still maintain that federal claim, I don't understand your position. He can do that after, even though he has a contract with a company, that it goes to arbitration? Yes, because that dispute, the dispute about whether or not he is entitled to overtime under the FLSA, had already been filed. Which means, if that's true, that means that the agreement that you had with him, between the companies, just has no operative effect at all with regard to that employee? That's not true. That's absolutely not true. Let's say that on March 16th, he was sexually harassed by his supervisor, right? That claim would go to arbitration, right? He was fired. You know, Mr. Cabala had worked there almost four years at the time he filed this lawsuit, and mysteriously, within a couple of months, he was fired after he filed this lawsuit. It seems like that claim, which accrued after this, not accrued, but that came into being, this dispute came into being after the effective date of the agreement, that would go to arbitration, right? But this dispute, about whether or not he's entitled to overtime, that dispute was already pending in court. And so, that limited scope goes forward in court, whereas the remaining issues go forward in arbitration. I'm sorry. Well, you are arguing the underlying merits of the effect of the contract, but I see this whole case, at least on appeal, as being rather the question of who decides all of that. In other words, the contention that you're making, seems to me, is a contention under the delegation clause that has to be made to an arbitrator who may very well agree with your position. I don't think that's right, because the delegation clause is limited by the same language that appears in sentence one on paragraph one of page one of their arbitration policy, and that it applies only to things that are in the future, as Judge, I understood Judge Higginbotham to be noting before, the delegation clause does not help them here, because the delegation clause applies to things that are covered by the policy, and this is clearly excluded from the policy. Well, I pick on both sides, I hear you. And so, I was trying to think of how I would analyze this, if I was wearing a black robe. And, you know, arbitration contracts are supposed to be treated like any other contract. So let's assume that this had been an employment contract, okay? And the employment contract had said, as of March 13th, 2015, I'm going to hire you. And I had filed a lawsuit saying, you failed to hire Teddy Kubala on March 9th, 2015, four days before you were supposed to hire him. Supreme would rightly say, there's no contract to hire you on March 9th. We have no contract with respect to employment on March 9th, right? Or Supreme could say, okay, we have a contract, but it's for March 13th, so we didn't breach the contract. Now, I guess I could understand that, too, that's, I think, the way you're construing my argument. It's not how I argue. I believe there just isn't an agreement. I agree with Judge Togliatti. There just isn't an agreement. This agreement says, we have an agreement to arbitrate these claims. We have no agreement to arbitrate these claims. So there is no agreement. But even if we were to take it on in terms of the delegation clause, it's certainly not clear or unmistakable that this delegation clause would apply to this dispute. Because, again, the delegation clause is limited by the from this date forward language that's on page 1. Okay. But that's a gateway issue to be decided by the arbitrator. No. Everything that you've been talking about. Let's be clear on the record. Your client is making claims for wages not paid after March 9th. They are, yes. They are making claims. He is making claims for a few months after March 9th. And the agreement to arbitrate clearly covered that period. And there's a dispute about that period. The dispute may have begun earlier, but there's a dispute day by day, week by week, pay period by pay period that arose after March 9th. No. No. No. The dispute arose when he filed the law. Well, it arose every time they paid him, didn't it? He's saying, I wasn't paid correctly. That's more of a continuing violation type situation. Well, okay. But it is not. I just want to make sure. I mean, think about it. I understand your argument. Sure. I don't agree with it, but I understand it. Sure. I just want to be clear on this record that there are pay periods in dispute after March 9th. Yes. But, I mean. I hear your argument. Right. And let me follow up on that. Let's assume that Mr. Cavalli said, okay, I don't care about the few weeks that you retained me before you fired me after March 9th, right? I want to proceed with respect to my years of claims that accrued prior to that. That would be a rational response. Because recall, we're trying to figure out whether or not there was a meeting of the parties, right? And under the interpretation that I think I'm hearing, the terms of the arbitration agreement says neither filing nor serving a lawsuit stops the applicable limitations from continuing to run. Which would mean that Mr. Cavalli would have had to agree that although he had filed a lawsuit, stopped the statute of limitations with respect to his claim, he nonetheless agreed, or would have agreed, to unstop the statute of limitations and require himself to proceed to arbitration. Which makes absolutely no sense and does not in any way reflect a meeting of the minds. No one would agree to that. And to follow up on your point, Judge Smith, it is always the case that there is something for the court to decide with respect to whether or not the scope of the arbitration, even if we are going on scope. Even if we are going on scope, there's always something for the court to decide. The fact that some arbitration agreement exists somewhere, the fact that some arbitration agreement exists somewhere, and again, we're not conceding that there is an arbitration agreement that could apply to this, but let's assume that there is. Well, your brief quotes one, so I assume that there is. I'm sorry? Your brief quotes one, so I assume that there is. You quote language from the arbitration agreement. Well, that's what they say the agreement is, right? Now, Judge Togley obviously disagreed. She said that's not an agreement that applies here, right? And we believe that. We believe that there is no agreement to arbitrate claims that— There is an arbitration agreement. Now, whether it covers this—this dispute is the question. There is an arbitration agreement. You do not dispute that. And we know what the language is, and it's our job to decide whether we agree with your argument or not. We can look at the language and decide. That is—again, that is certainly a rational way to look at it, I believe, right? That is not the analysis that Judge Togley employed, and that is not the—therefore, it's not the position that we're trying to defend here on appeal. I understand your position. But even under that position, okay, there would still be the question of does the delegation clause apply? It does not because of the same limitation in terms of temporal limitation. So it does not apply. Even if it did apply, there would still be a question as to whether or not this dispute came within the terms of the policy, and we know that it does not. We can go back to AT&T versus Communication Workers of America, right? It says when there is an explicit clause that excludes certain disputes from an arbitration agreement, that overcomes whatever presumption there is in favor of arbitration, whatever bias there is in favor of granting arbitration. And we know from, again, the first line of their policy that it applies to disputes that you may have at any time following the effective date of this policy. And we may decide that claims regarding pay periods after March the 9th or disputes following March the 9th. We may decide that. We may read that language and disagree with your interpretation. I have your argument. I'm just— Sure. It says what it says. We're going to have to decide what it says. I agree. I agree. Well, I don't quite understand how you read the Rent-A-Center case. How I read that is that a delegation clause operates to force a case out of federal court and onto arbitration even when the plaintiff's argument is that there's no valid arbitration agreement at all. Isn't that what Rent-A-Center says? No. I don't think so. I mean, the determination of whether or not there's an agreement to arbitrate is a gateway question. That has to be decided by the court. And think about why that must be so. Otherwise— Yes. There is an agreement to arbitrate. And the question is, is there a valid agreement to arbitrate? Then you move to the delegation clause. You can't—you have to strike out the whole arbitration clause. That's what agreement to arbitrate means. The scope clause is a different inquiry. And I understand your position, and respectfully, I get it. And again, that's not the analysis Judge Togli employed, and we're here today defending Judge Togli's order. But let's think about it, even if it is with respect to scope. I mean, this Court, and to my knowledge, every appellate court that has directly addressed the issue has decided that even when there's a delegation clause, that still doesn't mean that there's no role for the court to play in determining whether or not the scope of the arbitration agreement can even arguably reach these claims. The Qualcomm case out of the Federal Circuit addresses this issue directly, and it says that if it's—I've forgotten the precise language, but if it's— Wholly groundless. Wholly groundless. Thank you, Your Honor. That's what I said in the— You did, in Douglas. —Douglas v. Regents Bank case. In fact, we hooked on to what the Federal Circuit had said. You did, Your Honor. I was on that panel as well. The wholly groundless standard says, and under Qualcomm, which this Court adopted, says that what you should do is you should look at the scope of the arbitration—the Court should look at the scope of the arbitration agreement and the precise claims that are alleged to be covered. Okay? At the time that they filed this motion, they said, this arbitration agreement covers all FLSA claims. That can't—that can't be true. Even if you say it covers claims after March 9th—or March 13th, 2015, there's no way to say that it covers prior ones. And so it would be groundless for them to say that. So you would remand to the district court to resolve that ambiguity? That's a good question, Your Honor. So I think that it is clear from Judge Togley's earlier opinion that she believes that there's no way to interpret the agreement as covering it. I know in Qualcomm they did, in fact, remand to the district judge. But if I could quote Judge Togley, there is no indication and no legal support to find that Kubala's continued employment meant that he had to submit past disputes that had already been filed in Federal court arbitration. Nothing in the record demonstrates an intention to form a contract as it relates to disputes that were already filed, and that's at Record 332. And so I don't want to speak for her, but I think we know how she would rule on this issue. So if we disagree with her, we should just tell her at least as of March 13th forward? Yes, Your Honor. That is, I think, the correct—if you disagreed with her, what I think the correct response would be is to say, with respect to claims that post-8 tell them that if he wishes to pursue them, he needs to pursue them in arbitration. All right. Thank you, Mr. Burke. Thank you, Your Honor. All right. You've saved time for rebuttal. Respectfully, I do not think that there is a serious dispute with respect to whether or not an arbitration agreement even exists, but I'll briefly address that issue. I think a careful reading of Judge Togley's opinion actually reflects her acknowledgement that an agreement exists and that, from her perspective, covered claims applied after a date certain, the March 13th date. That is not a finding that there is no agreement. It is instead Judge Togley's respectfully intrusion upon the delegation issue where it is only an arbitrator who gets to decide whether or not certain claims are or are not covered by the dispute. Now, with respect to the delegation issue, I would be remiss if I did not mention this Court's holding in AGRI, which I think speaks specifically to the types of arguments that I've just heard from opposing counsel, weighing the relative merit or, from his perspective, lack of merit of treating some claims as if they are within or without the arbitration agreement. Page 340 of AGRI, the Court wrote, there is a legitimate argument that this arbitration clause covers the present dispute and, on the other hand, that it does not. The resolution of these plausible arguments is left for the arbitrator. This is not the Qualcomm dynamic or, as this circuit adopted it in Douglas v. Regis' break, where it is wholly groundless for someone to take the position that at least a portion of Mr. Caballa's claims fall within the arbitration agreement. I've cited the legal basis for that, which is that, as a matter of law, his claims after March 9th or March 13th literally didn't exist. They could not have accrued until the subsequent pay period. Would you say that the pre-March 9th, is that wholly groundless to say that that's arbitrable? Your Honor, it would require a construction of the agreement. I certainly think that there is a case that could be made that those claims are outside the scope of the agreement, but perhaps there's a case to be made that they're within. What's your best argument that they're within? The way that a covered dispute is defined to specifically refer to Federal Labor Standards Act causes of action, I'm not certain that the agreement speaks with sufficient clarity to cut off this type of continuing cause of action where a portion of the claim predates the arbitration agreement, but it continues after. I will, however, concede that in no event, in fact, I will passionately advocate that in no event is it appropriate under this type of agreement for a court to make that call, because Mr. Kubala agreed to a provision in the arbitration, in the existing, indisputably existing arbitration agreement whereby he assented to precisely that. Whereas the court made that determination based upon the competing positions of the parties, we respectfully submit that the appropriate form is for the arbitrator to do so. One other observation that I will make. In addition to the legal principle that the subsequent pay periods and the causes of action don't accrue until the actual pay period, Mr. Kubala, in essence, affirmed the operation of the arbitration agreement by making the choice to continue to be employed and to accept the payment, or ratification perhaps would be a better word, in those subsequent pay periods. So this is not a dynamic where Mr. Kubala has been denied any rights or somehow has been unfairly treated. He elected to remain employed by Supreme, and based upon that, there are certain legal consequences of the arbitration agreement. We respect the fact that the court remanded and directed the court to refer the matter to arbitration, such that those legal consequences can be respected. Thank you. Thank you, Mr. Knight.  The last case for today. Thank you.